THE PEOPLE OF THE STATE OF NEW YORK, on the Complaint of WILLIAM LEHR, Complainant, *v.* SAMUEL MACDONALD, Defendant.

City Court of New Rochelle, April 23, 1938.

*Aaron Simmons, Corporation Counsel [John A. Bodmer of counsel],* for the People.

*John H. McCormick, Jr.,* for the defendant.

FASSO, J. This case presents the unusual situation wherein the defendant, a police officer connected with the Westchester county parkway police department, while operating a motor cycle, the property of the police department, received while on traffic patrol duty, on a public highway, a summons from one William Lehr, a member of the police department of the city of New Rochelle,

for operating the motor cycle without a license. He is charged with a violation of subdivision 2 of section 41 of the Vehicle and Traffic Law of the State of New York, which provides that no person shall operate a motor cycle unless such person is licensed to operate a motor vehicle. It appears that the license of the defendant to operate a motor vehicle was suspended for failure to pay a judgment, and he is in the same position, therefore, as one who never had a license to operate a motor vehicle.

The precise question to be decided is whether or not a police officer, while in the operation of a police motor cycle in the performance of his duties as a traffic officer, requires a license. In order to determine this question consideration must be given to various sections of the Vehicle and Traffic Law of the State of New York. In its pertinent provisions the statute states: " ' Vehicle ' shall include any device in, upon or by which any person or property is or may be transported or drawn upon a public highway " (§ 2, subd. 7); that a " ' motor vehicle ' shall include all vehicles   *   *   * except motor cycles   *   *   *   and police vehicles " (§ 2, subd. 8); and that " ' Motor cycle ' shall include all motor cycles " (§ 2, subd. 9). There are also provisions to the effect that no person shall operate or drive a motor vehicle unless duly licensed (§ 20, subd. 4), and that no person shall operate or drive a motor cycle unless such person is duly licensed to operate a motor vehicle by a license issued under section 20 (§ 41, subd. 2).

That a police officer may drive an official automobile while on duty, although the officer has no license, is unquestioned, for a police automobile comes within the term " police vehicles." But the statute also says that a motor cycle shall include all motor cycles, and that no person shall operate one unless licensed to operate a motor vehicle.

The defendant, however, urges that a police motor cycle is a " police vehicle," and is embraced within that term as firmly as any police motor car or automobile. The view of the defendant has the support of a number of authorities. Thus, a motor cycle used by traffic policemen in pursuing a traffic violator has been held to be a " police patrol wagon " within the meaning of the Minnesota Motor Vehicle Act (Gen. Stat. 1913, § 2619), which defined a motor vehicle so as to exclude " police patrol wagons." (*Edberg* v. *Johnson*, 149 Minn. 395; 184 N. W. 12, 13.)

In 1936 (Laws of 1936, chap. 911) the Legislature substituted in the Vehicle and Traffic Law of the State of New York the term " police vehicles " in the place and stead of " police patrol wagons." If a motor cycle is a police patrol wagon there can be no doubt that it comes within the term " police vehicle." If words are

given their ordinary meaning, a motor cycle certainly would be construed as a " police vehicle," for the word " vehicle " has been held to include even a bicycle. (3 R. C. L. 783.) This court, therefore, is of the opinion that a motor cycle is a police vehicle.

The complainant, however, argues forcefully that the law is explicit, and that it states in another subdivision, " ' Motor cycle ' shall include all motor cycles."

Since motor cycle is included both under the term " police vehicles " and is embraced within a subdivision which states that " motor cycle " shall include all motor cycles, there is a conflict between the two sections, and it is necessary to harmonize them so as to preserve and promote the paramount intent of the Legislature.

Where a statute is clear and explicit it is fundamental that a court cannot review the expediency, wisdom or propriety of the action of the Legislature, for it is not the function of a court to substitute its judgment for that of the lawmaking authorities. The court, however, may quite properly, and should, give full effect to the intent of the Legislature, so that the object, spirit and purpose of a statute will be furthered. All parts of a statute must be considered together so as to avoid either inconsistency among several provisions or objectionable results, especially where public inconvenience may result. The real intent of the Legislature must serve as the guide.

Although, literally, the term " all motor cycles " includes every motor cycle, regardless of ownership, description or purpose for which used, the literal meaning of words must yield to the real intent of the Legislature. (See 1 McKinney's Consolidated Laws [Statutes & Statutory Construction], §§ 62, 63 and 64.) It frequently becomes the duty of the courts in construing general words to limit their operation so as to preserve the internal sense of the statute and avoid absurd or objectionable results. Thus, where a statute prohibited storage or handling of dangerous combustibles in tenements, and a tailor kept naphtha and gasoline on the premises, it was held that there was no violation of the statute. (*People* v. *Friedman*, 132 App. Div. 61.) Again, where the literal language of a statute prohibited a doctor from testifying on a trial as to information he acquired in attending the patient who was murdered, it was held that the statute, although literally a prohibition, could not be construed so as to exclude such evidence. (*Pierson* v. *People*, 79 N. Y. 424.) In that case the court stated (p. 433): " Words otherwise far-reaching in their scope may be limited. * * * Such construction of a statute should be adopted as appears most reasonable and best suited to accomplish the objects of the statute; and where any particular construction would lead

to an absurd consequence, it will be presumed that some exception or qualification was intended by the Legislature." It appears, therefore, that words absolute in themselves and language the most broad and comprehensive may be qualified and restricted by other parts of the statute, or by facts and circumstances to which they relate. A thing which is within the letter of a statute is not within the statute unless it be within the intention of the makers, and this principle is especially applicable when the Legislature has expressed itself in terms of general import. (1 McKinney's Consolidated Laws [Statutes & Statutory Construction], p. 128.)

Adopting the views presented to the case at hand, is it reasonable to suppose that the intent of the Legislature was that a police officer must obtain a license to operate a motor cycle, but need not obtain a license to operate a motor car? It cannot be conceived that the Legislature intended so inconsistent and absurd result; rather, a reading of the various sections leads to the conclusion that the Legislature intended to exclude from the term " motor vehicle " all police vehicles, whether automobiles or motor cycles, and render it unnecessary for police officers, in the performance of their duties, to obtain from the public authorities a license to operate vehicles required in the governmental service.

The motion to dismiss the information is, therefore, granted.